UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL HULSE,

    Plaintiff,

v.                                         Case No:   3:16-cv-20-J-DNF

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Michael Hulse, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), the parties filed legal memoranda setting forth their respective positions, and Plaintiff filed a reply to Defendant's memorandum. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB in December 2004, alleging a disability beginning November 30, 2003. (Tr. 87-91). Plaintiff's claim was denied through two administrative review stages (Tr. 71-79) and on January 30, 2007, a hearing was held before Administrative Law Judge ("ALJ") Philemina M. Jones. (Tr. 472-502). ALJ Jones found that Plaintiff was not disabled by decision dated March 29, 2007. (Tr. 24-37). The Appeals Council denied Plaintiff's request for review on February 28, 2008. (Tr. 9).

Plaintiff filed a complaint before this Court on April 11, 2008 (3:08-cv-366). On June 30, 2008, the Commissioner requested that the case be remanded under Sentence Six of 42 U.S.C. § 405(g). The Court granted the Commissioner's request and remanded the case for further administrative action. By decision dated December 3, 2008, the Appeals Council denied Plaintiff's claim. The Commissioner moved to reopen the case before this Court on March 10, 2009. The Court granted the Commissioner's request. On December 17, 2009, the Court reversed the decisions of the ALJ and the Appeals Council and remanded Plaintiff's claim for additional administrative proceedings. (Tr. 525-45).

On remand, a hearing was held before ALJ Jones on July 10, 2010. (Tr. 656-669). ALJ Jones issued a decision dated July 13, 2010, again denying Plaintiff's claim. (Tr. 713-34). Plaintiff

appealed this decision by filing a complaint in this Court (3:10-cv-910). On June 14, 2011, the Court again reversed ALJ Jones' decision and remanded the claim for additional proceedings.

On remand, a hearing was held before ALJ Douglas A. Walker on December 5, 2011. (Tr. 1052-76). On February 1, 2012, ALJ Walker entered a decision denying Plaintiff's claim. (Tr. 735-45). Plaintiff filed written exceptions to ALJ Walker's decision and on February 22, 2013, the Appeals Council reversed ALJ Walker's decision and remanded for further proceedings. (Tr. 801-03).

On remand, a hearing was held December 4, 2013, before ALJ John D. Thompson, Jr (also, "the ALJ"). (Tr. 1077-52). A supplemental hearing was held on July 10, 2014. (Tr. 1153-96). On October 9, 2014, ALJ Thompson entered a decision denying Plaintiff's claim. (Tr. 676-700). On November 10, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 670-72). Plaintiff filed a complaint January 7, 2016, initiating the instant action.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of November 30, 2003, through his date last insured of December 31, 2005. (Tr. 682). At step two, the ALJ found that Plaintiff had the following severe impairments through the date last insured: a history of lumbar spine pain secondary to degenerative disc disease; a history of a pain disorder secondary to a general medical condition and a history of alcohol and substance abuse, in remission. (Tr. 682). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 683).

Before proceeding to step four, the ALJ found that Plaintiff, though the date last insured, had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can sit, stand and walk for 6 hours each in a normal workday; he can occasionally lift/carry 20 pounds and more frequently lift/carry 10 pounds or less; within the assigned weight limits, he can push/pull arm/hand controls frequently and foot/pedal controls occasionally; he can climb ramps and stairs occasionally, but is precluded from climbing ropes, ladders and scaffolds; all other postural maneuvers (balance, bend/stoop, crouch, crawl and kneel) can be performed occasionally; within the assigned weight limits, he can reach in all directions, handle, finger and feel without limitation; he has no difficulty in his ability to see, speak and hear; he should not be exposed to temperature extremes or work at unprotected heights or in proximity to concentrated vibrations; he can perform on a sustained basis simple, rote and repetitive work tasks in response to oral directions in a work environment with work tasks that are largely fixed so there is little change in these tasks from one day to the next; he cannot be subject to any strict production goals or quotas and he is able to interact with others including co-workers, supervisors and members of the general public without significant limitations.

(Tr. 685). At step four, the ALJ found that Plaintiff, through the date last insured, was unable to perform his past relevant work as a carpenter, "salesperson, Motor Vehicles" and "salesperson, Trailers and Motor Homes." (Tr. 696).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that he could perform through his date last insured. (Tr. 697). Specifically, the ALJ found that Plaintiff could have performed such jobs as "cashier II," mail clerk, document preparer, addresser, ticket seller, storage facility rental clerk, and surveillance system monitor. (Tr. 698). The ALJ concluded that Plaintiff was not under a disability from November 20, 2003, the alleged onset date, through December 31, 2005, the date last insured. (Tr. 700).

**II.     Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ erred at step five by relying on the testimony of a vocational expert to find that there are occupations that Plaintiff could have worked that existed in significant numbers in the national economy. (Doc. 18 p. 1). Before addressing the parties' respective arguments, it is helpful to review the vocational expert's testimony at issue. At the December 4, 2013 hearing, the ALJ asked the vocational expert a hypothetical question consistent with his ultimate RFC finding. (Tr. 1142-44). The vocational expert testified that an individual with the limitations as set forth in the hypothetical question could not perform Plaintiff's past relevant work. (Tr. 1144). The vocational expert testified that such an individual could perform the occupations of cashier II, mail clerk, and document preparer. (Tr. 1144). The ALJ then asked the vocational expert a second hypothetical question that described an individual even more limited than the individual in the first hypothetical question. (Tr. 1145). The vocational expert testified that such an individual could perform the occupations of ticket seller, storage facility rental clerk, and surveillance system monitor. (Tr. 1145-46). The vocational expert testified that he could not indicate the availability of the identified jobs between 2003 and 2005 without further research. (Tr. 1147).

After the December 4, 2013 hearing, the ALJ sent an Interrogatory to the vocational expert and outlined a hypothetical question consistent with the ALJ's ultimate RFC finding. (Tr. 1041-46). The vocational expert confirmed that Plaintiff could not perform his past relevant work, but could perform the occupations of cashier II, mail clerk, and document preparer. (Tr. 1044). The vocational expert also indicated that Plaintiff could perform the occupations of addresser, ticket seller, storage facility rental clerk, and surveillance system monitor. (Tr. 1044). The vocational expert's response to the Interrogatory also included a chart response showing the numbers of jobs

available in the national and Florida economy for the identified occupations as of May 2003, May 2005, and May 2013. (Tr. 1044-45).

At the supplemental hearing held on July 10, 2014, the vocational expert testified that the Bureau of Labor Statistics (BLS) only provides job incidence data by Standard Occupational Classification (SOC) code numbers, "not by individual jobs." (Tr. 1160). The vocational expert explained that in order to generate the numbers he provided in his answers to the Interrogatory, he examined BLS data from 2003 and 2005 and provided job incidence data only for the SOC code assigned to each individual Dictionary of Occupational Titles (DOT) occupation he provided as of 2013. (Tr. 1160-63). The vocational expert testified that for example, the DOT occupation of cashier II, as of 2013, has a SOC code of 41-2011 (Tr. 1162) and in May 2005 the BLS reported that there were a total of 3,481,420 jobs for all of the individual DOT occupations listed under SOC code 41-2011. (Tr. 1162-63). The vocational expert testified that there were 18 DOT occupations included within the SOC code. (Tr. 1164). The vocational expert testified that there was no way to confirm that the current SOC code applicable for the DOT occupations he listed was the same in 2005 nor, specifically, what DOT occupations were listed under the SOC code he used in 2005. (Tr. 1170).

Plaintiff argues that the vocational expert was unable to produce any credible evidence to support a finding that the occupations identified by the ALJ at step five existed in significant numbers in the national economy as of 2005, the year Plaintiff was last insured. (Doc. 18 p. 7). Plaintiff contends that the vocational expert, by his own admission, provided job incident data only for all of the occupations contained in a specific SOC code as of 2005, but could not testify whether the individual DOT occupations he identified were contained in that SOC at that time. (Doc. 18 p. 9). Plaintiff notes that the vocational expert confirmed that he did not have any information that

would allow him to state how many jobs were available for each DOT occupation he listed as of May 2005. (Doc. 18 p. 10).

The Commissioner argues that the vocational expert's testimony constitutes substantial evidence to support the ALJ's step five finding. (Doc. 19 p. 6). The Commissioner notes that the vocational expert testified that there were over six million jobs in the national economy for the jobs of cashier II, mail clerk, and document preparer that a hypothetical person with Plaintiff's RFC could perform. (Doc. 19 p. 6-7). The Commissioner argues that a reasonable person, employing common sense, could conclude based on the vocational expert's testimony that a significant number of jobs existed during the relevant period that Plaintiff could perform. (Doc. 19 p. 7).

Here, the Court agrees with the Commissioner that common sense dictates substantial evidence supports the ALJ's finding that significant jobs existed in the national economy during the relevant time period that Plaintiff could have performed. In his decision, the ALJ relied upon the testimony of the vocational expert to find that Plaintiff was capable of performing seven jobs which totaled over 8 million in the nation and 600,000 in the region in May 2005. While Plaintiff disagrees with the methodology the vocational expert utilized to reach these numbers, the Court does not find that the vocational expert's methodology undermined the ALJ's reliance on the testimony. As the ALJ noted in his decision, "[t]he vocational expert testified that the job numbers that he provided in response to the interrogatories are accurate for the period from 2003-2005 to the best of his knowledge based on the information he could glean from all of the vocational sources and records available for that time period" and that "he indicated that there has never been a specific or discrete formula for vocational experts that allows them to give numbers with pinpoint precision and he gave the best numbers based on the information he has available to him." (Tr.

699).  The ALJ relied on the testimony of a vocational expert who employed the best method he had available to estimate the number of jobs that were available over a decade ago.  The Court finds no error in this.

There is no bright line rule as to what constitutes a "significant number" of jobs that an ALJ must identify.  *Barros v. Colvin*, 2016 WL 4473186, at *5 (M.D. Fla. Aug. 25, 2016).  The Eleventh Circuit has upheld an ALJ's determination that 440 jobs in Alabama and 23,800 jobs nationally constituted a significant number.  *Id.* (citing *Atha v. Comm'r of Soc. Sec. Admin.*, 616 F.App'x 931, 934 (11th Cir. 2015)).  The number of jobs identified in this case is far greater than those accepted as adequate by the Eleventh Circuit in *Atha*.  Accordingly, the Court finds that the ALJ properly found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

### III.  Conclusion

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties